UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

NOLAN McDANDAL,

    Plaintiff,

    v.      CAUSE NO.: 3:18-CV-732-JD-MGG

DR. LIAW, et al.,

    Defendants.

OPINION AND ORDER

    Nolan McDandal, a prisoner without a lawyer, filed a motion to reconsider the order denying a preliminary injunction. He seeks adequate medical treatment for carpal tunnel syndrome and dry skin, including pain medication, skin creme, and wrist surgery. "The purpose of preliminary injunctive relief is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir.1998). "In order to obtain a preliminary injunction, the moving party must show that: (1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest." *Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 619 (7th Cir. 2004).

    McDandal alleges that that he needs medical treatment for carpal tunnel syndrome, which causes excruciating wrist pain, and for his dry skin condition, which

causes cracked skin and open sores. According to the complaint (ECF 18), at the Indiana State Prison, he was diagnosed with carpal tunnel syndrome and dry skin and received pain medication, a wrist splint, and Minerin creme. He was also put on a waiting list for wrist surgery. On February 9, 2017, he transferred to Westville Correctional Facility and was placed under the care of Dr. Liaw. Upon his arrival, Dr. Liaw refused to give him more Minerin creme and instead advised McDandal to take shorter showers. Dr. Liaw later explained that Minerin was no longer necessary due to the change in weather. In July 2018, Dr. Liaw again refused to provide Minerin creme and told him that he could purchase it from the commissary even though McDandal could not afford it. He also refused to recommend wrist surgery. When McDandal threatened to sue Dr. Liaw, he ended the examination. He also confiscated McDandal's pain medication, removed him from the chronic care clinic, and told him to buy over-the-counter medication even though McDandal could not afford it.

In response, the Warden submitted an affidavit and McDandal's medical records from February 2017. ECF 38. According to the medical records, on February 9, 2017, McDandal arrived at the Westville Correctional Center with diagnoses of osteoarthritis and carpal tunnel syndrome. ECF 38-1 at 318-24. On May 3, 2017, Nurse Practitioner Jody Kupfenberg prescribed Pamelor for pain relief and recommended that McDandal purchase non-steroidal anti-inflammatory drugs (NSAIDS) from the commissary. *Id.* at 346-49. On August 4, 2017, Nurse Practitioner Kupfenberg observed that McDandal refused Pamelor, stating that it was ineffective. *Id.* at 357-60. She found that NSAIDS

were inappropriate due to his creatinine level and recommended acetaminophen for pain relief. *Id.*

On October 30, 2017, McDandal complained that the pain in his left wrist was more severe when he woke up in the morning. *Id.* at 378-83. He insisted on surgery and threatened a lawsuit. *Id.* Dr. Andrew Liaw advised him that he wore his wrist splint too tightly and that wearing it at night would improve his symptoms. *Id.* Dr. Liaw also observed a dry skin condition on McDandal's legs and prescribed Minerin. *Id.* On January 24, 2018, McDandal reported that he had started working again and requested a refill of Minerin. *Id.* at 385-87. Dr. Liaw observed that the dry skin condition had improved, renewed Minerin, and prescribed Mobic for pain relief. *Id.* On April 18, 2018, McDandal reported that he did not wear his wrist splint at night and that he felt that the carpal tunnel syndrome had spread. *Id.* at 395-97. Dr. Liaw informed McDandal that carpal tunnel syndrome does not extend from the wrists or hands. *Id.* He also observed that McDandal had no dry skin issues and declined to renew Minerin due to warmer weather. *Id.*

On July 19, 2018, McDandal requested Minerin, stating that he could not afford lotion because he was unable to work due to a disciplinary issue and that the lotions of the commissary were inadequate. *Id.* at 139-42. Dr. Liaw observed that McDandal had dry skin but that it had improved since winter and that the severity did not warrant Minerin. *Id.* Dr. Liaw advised McDandal to take shorter showers and to purchase lotion from the commissary, and McDandal threatened a lawsuit. *Id.* Dr. Liaw also discontinued McDandal from the chronic care clinic for carpal tunnel syndrome,

reasoning that, since McDandal was unemployed, he would not exacerbate the condition and that it could be managed with the wrist splint and pain medication from the commissary. *Id.*

Thereafter, McDandal repeatedly met with nurses to complain about dry skin and carpal tunnel syndrome and frequently mentioned his lawsuit. *Id.* at 47-66. The nurses responded that Dr. Liaw had addressed these issues and that McDandal had no new symptoms. *Id.* On January 3, 2019, in response to one of these requests, a nurse noted that McDandal had thirty dollars in his prison account. *Id.* at 48. On the same day, a nurse also observed that McDandal had dry skin with no cracks, fissures, redness, or flaking. *Id.* at 152-55.

On January 28, 2019, McDandal reported that he remained unemployed and requested surgery for carpal tunnel syndrome because he felt the condition had become worse. *Id.* at 173-76. Dr. Liaw asked which motions increased or decreased the pain, and McDandal would not directly respond. *Id.* Dr. Liaw examined McDandal's left arm, noted that McDandal likely exaggerated his condition during the examination, but found that the pain and immobility was likely the result of a rotator cuff injury instead of carpal tunnel syndrome. *Id.* Dr. Liaw referred McDandal to physical therapy for the left shoulder and wrist and indicated that a wrist splint replacement might be appropriate if McDandal requested one and if the wrist splint had lost its elasticity. *Id.* McDandal also requested Minerin. *Id.* Dr. Liaw observed dry skin but did not observe the open sores or the cracked skin that were present during the previous fall and winter. *Id.* He concluded that lotion for the commissary would suffice. *Id.*

McDandal filed a motion to introduce evidence, which the court construes as a reply in support of the instant motion. ECF 41. He attaches various exhibits, including medical requests, notes including his personal observations regarding his medical care, and correspondence. McDandal attests that, on July 19, 2018, he was required to return his supply of Mobic to the medication dispensary. ECF 41-2 at 1. On January 25, 2019, Thomas Hobbs, Health Services Quality Assurance Manager, reviewed McDandal's medical history and concluded that Dr. Liaw's examinations and treatment plans were appropriate. ECF 41-1 at 12. The medical requests indicate that McDandal has requested a new wrist splint and discussed it with medical staff but that he has not received one. *Id.* at 18-23.

To start, the court considers whether McDandal has shown a reasonable likelihood of success on the merits. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even

5

though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

For a medical professional to be held liable for deliberate indifference to a serious medical need, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate course of treatment does not establish deliberate indifference, nor does negligence or even medical malpractice. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

McDandal asserts that Dr. Liaw acted with deliberate indifference by refusing to recommend carpal tunnel surgery and by discontinuing his pain medication and Minerin. However, the record reflects that Dr. Liaw exercised his medical judgment with respect to each of these decisions. To start, the record contains no medical evidence to suggest that surgery is an appropriate treatment option for McDandal's wrist condition. Further, the record reflects that Dr. Liaw discontinued McDandal's enrollment in the chronic care clinic for carpal tunnel syndrome and Mobic prescription because McDandal stopped working. Dr. Liaw reasoned that McDandal was no longer required to engage in repetitive activities that would exacerbate the wrist condition. McDandal also alleges that Dr. Liaw has completely refused to treat him since July 2018, but, as recently as January 2019, Dr. Liaw thoroughly examined McDandal, diagnosed a rotator cuff injury, and referred McDandal to physical therapy.

Additionally, Dr. Liaw discontinued Minerin because McDandal's skin condition had improved and because he anticipated that McDandal's skin would not be as dry in warmer weather. He continued to refuse to prescribe the skin creme based on his assessment of the severity of the condition. Moreover, while McDandal asserts that he cannot afford lotion or pain medication from the commissary, he has not filed recent prison account statements, and it appears that McDandal had thirty dollars in his account as of January 3, 2019. Though McDandal has not yet received a wrist splint replacement, the record indicates that medical staff has met with him in response to his requests for one. Without further information, the mere absence of a wrist splint replacement is insufficient to establish deliberate indifference. Therefore, the court cannot conclude that McDandal is reasonably likely to succeed on the merits of his claims.

The court must also consider whether McDandal will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the defendants will suffer if the injunction is granted. For prisoner cases, the court has limited authority to order injunctive relief. *Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012). Specifically, "the remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right." *Id.* As a result of the court's limited authority, even if the court decided that McDandal was entitled to injunctive relief, the remedy would be to order the Warden to arrange for medical professionals to assess McDandal's carpal tunnel syndrome and dry skin condition. However, the record

reflects that Dr. Liaw has recently assessed McDandal and that nurses regularly respond to his frequent requests for medical attention. In other words, McDandal has access to medical professionals even without a court order. Therefore, the court concludes that McDandal will not suffer additional harm absent injunctive relief.

In sum, McDandal has not shown a likelihood of success on the merits and has not demonstrated that he will suffer irreparable harm absent injunctive relief, and the motion for a preliminary injunction is denied.

For these reasons, the court:

(1) DENIES the motion to reconsider (ECF 22); and

(2) CONTRUES the motion to introduce evidence (ECF 41) as a reply in support of the motion to reconsider.

SO ORDERED on April 12, 2019

                                              /s/ JON E. DEGUILIO
                                              JUDGE
                                              UNITED STATES DISTRICT COURT