UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

NOLAN McDANDAL,

   Plaintiff,

   v.               CAUSE NO.: 3:18-CV-732-JD-MGG

DR. LIAW, et al.,

   Defendants.

OPINION AND ORDER

   Nolan McDandal, a prisoner without a lawyer, proceeds on a claim for money damages against Dr. Liaw and Nurse Hanson on an Eighth Amendment claim of deliberate indifference for refusing to provide adequate medical treatment for carpal tunnel syndrome and dry skin and further proceeds on a related claim for injunctive relief. ECF 17. In the instant motion, the defendants seek summary judgment, arguing that McDandal failed to exhaust his administrative remedies because he did not complete the grievance process with respect to his claims. In response, McDandal maintains that he attempted to complete the grievance process with respect to Dr. Liaw but that the grievance officer prevented him from doing so. However, he concedes that he never filed a grievance with respect to Nurse Hanson. ECF 55 at 2.

   In a declaration, John Harvil, grievance specialist at the Westville Correctional Facility, attested that a grievance process is available to inmates and is explained to them at orientation. ECF 52. The grievance policy is also available to inmates at the law library. *Id.* This policy sets forth a four-step grievance process. ECF 52-2 First, an inmate

must attempt to informally resolve a complaint, typically by speaking to the staff member most directly associated with the complaint. *Id.* at 8-9. If the inmate is unable to resolve the complaint informally, he may file a formal grievance with the grievance specialist. *Id.* at 9-11. Among other requirements, a formal grievance must "relate to only one event or issue." *Id.* at 9. A grievance officer may reject a grievance as procedurally deficient but must provide as explanation to the inmate. *Id.* at 10. In such cases, the inmate must revise his grievance and resubmit in within five days. *Id.* If an inmate is dissatisfied with the grievance specialist's determination on a formal grievance, he may file an appeal with the warden or his designee. *Id.* at 11-12. Finally, if an inmate is dissatisfied with the warden's determination, he may file an appeal with the department grievance manager. *Id.* at 12-13.

According to the grievance records, on August 16, 2018, McDandal submitted a formal grievance regarding medical treatment for dry skin and carpal tunnel syndrome. ECF 52-3 at 3. On August 28, the grievance officer rejected the grievance, stating, "Your complaint or concern contains multiple issues or events. You may separate the issues and submit a separate form for each one that you wish to grieve." *Id.* at 1-2. The grievance officer also informed McDandal that, despite the procedural deficiencies, he had consulted medical staff, and he relayed the reasoning underlying McDandal's course of medical treatment. *Id.* at 1-2. On September 4, McDandal initiated this lawsuit by filing a complaint. ECF 1. On January 19, 2019, McDandal followed the grievance officer's instructions by submitting a grievance regarding medical treatment for dry skin and another grievance regarding medical treatment for carpal tunnel syndrome. *Id.*

at 5, 7. On February 15, 2019, the grievance officer rejected these grievances as untimely without good cause. *Id.* at 4, 6.

On June 24, 2019, McDandal asked the grievance officer about informal grievances submitted in May 2019 regarding the conditions at the Westville Correctional Facility and that he wanted to proceed with the grievance process. ECF 56-1 at 3. In response, the grievance officer stated that it was not his role to answer informal grievances and that grievances could only be appealed if inmates provided a grievance log number. *Id.*

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003).

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). In other words, "a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "To exhaust remedies, a prisoner must file

3

complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id.* at 1025. "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

Inmates are only required to exhaust administrative remedies that are available. *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears on paper but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, administrative remedies are not considered available. *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

Because the PLRA requires that prisoners exhaust their administrative remedies before filing a lawsuit, the court will focus on McDandal's efforts before he filed this lawsuit on September 4, 2018. ECF 1. The parties do not dispute that McDandal did not complete the grievance process with respect to his claims before filing this lawsuit. Instead, their dispute focuses on whether the grievance officer prevented McDandal

from completing it at the formal grievance stage. McDandal maintains that the grievance officer incorrectly construed the August 2018 grievance as relating to two separate issues when it pertained to a single medial appointment with Dr. Liaw. He equates the grievance officer's response with affirmative misconduct that prevented him from exhausting his claims.

Courts have recognized three ways in which a grievance process may become unavailable. *Ross v. Blake*, 136 S. Ct. 1850 (2016). "First, an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* "And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

McDandal's primary contention is that the grievance officer wrongly characterized his grievance as containing two separate issues instead of a singular complaint regarding his medical treatment. While grievance policy may be ambiguous as to what constitutes a separate issue, the grievance officer's interpretations of the grievance and the policy were reasonable, and the instructions to raise the issues in separate grievances were straightforward and not onerous. As a result, even if McDandal's interpretation is correct, the grievance officer's conduct is not a sufficient

basis to find that the grievance process was unavailable. Moreover, McDandal offers no explanation as to why he did not comply with these instructions prior to filing this lawsuit, and there is no indication that the grievance officer would not have processed these grievances if McDandal had done so in a timely manner. To the contrary, the record indicates that the grievance officer had already partially processed the grievance by investigating the grievance despite believing that it was procedurally deficient. Consequently, the court finds that the grievance process was available to McDandal but that McDandal did not complete it with respect to his claims prior to filing this lawsuit.

In sum, the undisputed evidence demonstrates that McDandal did not exhaust his available administrative remedies with respect to his claims. Therefore, the motion for summary judgment is granted. Because there are no remaining claims, this case is dismissed without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("We therefore hold that all dismissals under § 1997e(a) should be without prejudice.").

For these reasons, the court:

(1) GRANTS the motion for summary judgment (ECF 50);

(2) DISMISSES this case without prejudice; and

(3) DIRECTS the clerk to enter judgment and to close this case.

SO ORDERED on January 6, 2020

                                                         /s/JON E. DEGUILIO  
                                                        JUDGE  
                                                        UNITED STATES DISTRICT COURT